## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

LAURA L. BANTZ,

               Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

               Defendant.

No. 17-CV-00002-LRR

**REPORT AND RECOMMENDATION**

---

      Plaintiff Laura L. Bantz seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Bantz argues that the administrative law judge (ALJ), Eric S. Basse, erred in determining residual functional capacity (RFC) because he discredited Bantz's subjective allegations without identifying inconsistencies in the record as a whole and did not include all of Dr. Russell Lark's limitations after giving great weight to Dr. Lark's RFC opinion. I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND[1]

      Bantz was born without a right hand, and she also suffers from carpal tunnel syndrome and ulnar neuropathy in her left arm and hand, obesity, and mental impairments. AR 19, 81.[2] She lives with her husband and cares for their small child, who was born in 2010. AR 51, 279, 525. She has not worked since March 2008. AR 279. She previously worked for years assisting people with disabilities in performing

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 12).

[2] "AR" refers to the administrative record below.

their activities of daily living in their homes. AR 41-43, 279. She testified that she initially quit that job because it was becoming too difficult for her to lift people, so she found work as a job coach, training people with disabilities with the skills they needed to perform their job duties. AR 42-46. She testified that she ended up quitting and returning to her previous work due to numerous complaints made by her coworkers regarding her ability to get along with people. AR 42, 45-46. After she returned to her previous employment, her supervisor accused her of stealing confidential information, and she testified that she "did[ not] feel [she] could stay at that job and work for that person anymore." AR 42-43. She then worked part-time at a gas station from January to March 2008, manning the cash register, cleaning, and cooking donuts and pizza. AR 39-41, 43, 279. She quit due to an inability to get along with her coworkers, who complained that she was not able to cook and count change as quickly as everyone else. AR 40. Bantz's work history made her eligible for DI benefits for disability established on or before December 31, 2013. AR 17.

Bantz has been treated for depression since at least 1998 and anxiety since at least 2008. AR 53, 341-42. Starting in June 2012, Bantz began treatment with psychiatrist Dr. Mark Mittauer, who diagnosed her with depression, anxiety, and a general mood disorder that could include bipolar disorder. AR 292-97. Dr. Mittauer prescribed medications for Bantz's mental health diagnoses, and Bantz routinely visited Dr. Mittauer for medication checks. AR 292-97, 298-302, 306-07, 552-57, 567-72, 594-98, 616. At each appointment, Dr. Mittauer assigned Bantz a global assessment of functioning (GAF) score, which generally indicated only mild to moderate mental-health symptoms. AR 23, 294, 297, 300, 302, 305-06, 553, 555, 557, 561, 568-69, 572, 598. Bantz met with a licensed social worker for a therapy consultation in April 2013, with one follow-up two weeks later, but that is the extent of counseling she appears to have received. AR 303-305.

Treatment notes reflect Bantz first reported difficulties with her left hand in June 2011. AR 491-92. On September 13, 2013, Bantz underwent an electromyography

2

(EMG) study. AR 310-13. Based on the EMG results, Dr. Craig Dove, the interpreting physician, diagnosed Bantz with left carpal tunnel syndrome and left ulnar neuropathy but classified the conditions as "mild." AR 312-13. On September 17, 2013, Bantz received her EMG results and was instructed to try Ibuprofen and a wrist brace for pain. AR 436. On August 13, 2015, Bantz underwent a second EMG study. AR 602-03. Dr. Thomas Rogers, the interpreting physician, found no evidence of left median or ulnar neuropathy and no evidence of left cervical radiculopathy. AR 603. Dr. Rogers found that the EMG was normal and that "her values [we]re slightly better than her previous study in 2013." *Id.* Dr. Rogers recommended "conservative measures including trying to avoid leaning on her elbow." *Id.*

Bantz filed an application for DI benefits on September 12, 2013, alleging a disability onset date of March 8, 2008. AR 17, 81, 174-80. Her application was denied initially and on reconsideration. AR 17, 80-107. In connection with those reviews, state agency consultants from the Iowa Disability Determination Service evaluated Bantz's physical and mental RFC:[3] physical RFC assessments were completed by Laura Griffith, D.O., on November 5, 2013, and by Matthew Byrnes, D.O., on February 13, 2014; and a mental RFC assessment was completed by Russell Lark, Ph.D., on February 25, 2014.[4] AR 86-88, 99-104.

Bantz requested a hearing before an ALJ, and a video hearing was held on September 4, 2015. AR 17, 33-34, 128-29, 142. Both Bantz and vocational expert (VE) Carma A. Mitchell testified at the hearing. AR 33-34. On October 23, 2015, the ALJ issued a written opinion, following the familiar five-step process outlined in the

---

[3] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[4] Bantz's mental RFC was not evaluated on initial review because state agency consultant Dr. David Christiansen, Ph.D., determined that she had no severe mental impairments. AR 84-85.

3

regulations[5] to determine Bantz was not disabled. AR 17-27. The ALJ found that Bantz suffered from the severe impairments of congenital absence of the right hand, left carpal tunnel syndrome, left ulnar neuropathy, obesity, bipolar affective disorder, mood disorder, and generalized anxiety disorder. AR 19. To determine whether Bantz's impairments prevented her from working, the ALJ determined Bantz's RFC through the date last insured:

> [Bantz] had the [RFC] to perform light work . . . except she had no limits in standing, walking, or sitting, but had no use of her right, upper extremity to reach, handle, or finger. However, [Bantz] could use her left, upper extremity to lift or carry 20 pounds occasionally and 10 pounds frequently, but she could handle and finger with that appendage no more than frequently. [Bantz] was also precluded from climbing ladders, ropes, and scaffolds, and finally, she could have no more than occasional interaction with the public, co-workers, or supervisors.

AR 21.

In evaluating Bantz's RFC, the ALJ considered treatment records, Bantz's statements about her symptoms (which the ALJ did not fully credit), statements from Bantz's mother, the mental RFC opinion of Dr. Mittauer (to which the ALJ gave little weight), and the RFC opinions of the state agency consultants (to which the ALJ gave great weight). AR 21-25. Based on his determination of Bantz's RFC, the ALJ found that although Bantz could not perform her past work, a significant number of jobs existed in the national economy that Bantz could perform, such as counter clerk, parking lot attendant, restroom attendant, and conveyer line tender. AR 25-27.

---

[5] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

The Appeals Council denied Bantz's request for review on November 9, 2016 (AR 1-4), making the ALJ's decision that Bantz was not disabled the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Bantz filed a timely complaint in this court (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 13-15), and the Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II.    DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Bantz challenges only the ALJ's RFC determination. She argues primarily that the ALJ's RFC assessment was flawed because the ALJ discounted Bantz's allegations without identifying inconsistencies in the record as a whole. Bantz also argues that the ALJ failed to include each of Dr. Lark's limitations in the ALJ's RFC assessment after giving great weight to Dr. Lark's opinion.

### A.    Bantz's Subjective Complaints

Bantz argues the ALJ improperly discounted some of her subjective complaints related to the limitations of her left hand. Doc. 13 at 4-12. When evaluating a claimant's subjective complaints—including pain and weakness—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration,

5

frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986).[6] "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. The ALJ may not discount a claimant's subjective allegations based "solely on a lack of objective medical evidence." *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991). The ALJ may reject a claimant's subjective complaints, however, based on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). "The ALJ [i]s not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

Bantz testified that she wears a splint on her left wrist every day to help with pain, which she feels constantly. AR 49-50. She testified that using a fork, putting on makeup, and brushing her teeth causes tingling and numbness but admitted that she "can just shake it off and it will go away," although "it comes back frequently." AR 50-51. Despite pain, numbness, and use of the splint, she is able to use her left hand to do things such as lift a gallon of milk (although she testified this lifting causes pain), use a fork, tie her shoes, and button her clothes. AR 51, 58, 62. Tying her shoes, counting change, and other activities take her longer to do than a person who has the use of both hands, and there are some things, like operating a manual can opener, that she is unable to do one-

---

[6] The Eighth Circuit Court of Appeals did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

6

handed. AR 40, 62, 67. She also testified that she is unable to carry a basket of laundry or her forty-pound child because the load puts too much stress on her wrist. AR 51, 58. According to Bantz, the tingling and numbness in her left hand has worsened since 2013. AR 58.

Bantz argues that the ALJ erred in determining, contrary to Bantz's allegations, that Bantz "could handle and finger with [her left, upper extremity] no more than frequently."[7] AR 21; *see* Doc. 13 at 4-5, 12. Bantz also argues that the ALJ erred by failing to include a limitation related to the speed with which she can use her left hand. Doc. 13 at 4-6, 10-13.

The ALJ found Bantz's allegations related to her left arm and hand were inconsistent with the objective medical evidence. AR 22-23. The ALJ noted that the treatment notes contain no reference to carpal tunnel syndrome in Bantz's left hand until September 2013—five and a half years after the alleged onset date.[8] AR 22, 310-11. The ALJ further noted that although Bantz was diagnosed with carpal tunnel syndrome and left ulnar neuropathy, her doctor classified the conditions as "mild." AR 23, 311. Additionally, the ALJ pointed out that there was only one follow-up visit for these conditions in the remaining two and a half months before Bantz's insured status expired, and during that visit, Bantz received her EMG results and was instructed to try ibuprofen and a wrist brace. AR 23, 436. Although Bantz testified at the hearing in September 2015 that her hand had worsened, an EMG from around that time (and after the date last insured) reflected normal results that were "slightly better" than the EMG from 2013.

---

[7] Frequently is a term of art meaning one-third to two-thirds of an eight-hour workday. *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010); *see also* Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

[8] Bantz complained of left wrist pain in June 2011, but on examination, two tests associated with carpal tunnel syndrome were negative, and her provider told her "that she cannot apply for disability because of this yet," noting that ibuprofen and a brace may treat the problem. AR 491-92.

AR 602-03. Substantial evidence supports the ALJ's determination that Bantz's complaints related to her left hand were inconsistent with the medical evidence.

The ALJ also found Bantz's complaints inconsistent with her activities of daily living. AR 23. Just days after being diagnosed with carpal tunnel syndrome and ulnar neuropathy in her left wrist, Bantz completed a function report and noted that despite "constant pain[,] tingling[,] and numbness," she remained capable of making microwave meals and sandwiches daily, loading the dishwasher, doing small loads of laundry, driving, shopping in stores, paying bills, and counting change. AR 213-20. The ALJ found that many of these activities, "such as driving, grocery shopping, counting change, cleaning, and making meals[, ]denote the ability to frequently handle and finger with her left, upper extremity while performing work at the light level of exertion." AR 23. In addition, reports by Bantz's mother indicated Bantz was capable of household chores, fishing, and playing with her child. AR 222-223. The ALJ found that this report from Bantz's mother further showed Bantz was "capable of sustained light work using her left hand, with adequate fingering and handling." AR 23. Substantial evidence supports the ALJ's determination that the overall record, including treatment notes and Bantz's activities of daily living, is inconsistent with Bantz's complaints of more severe limitations in her left arm and hand.

Bantz also argues that the ALJ failed to consider the speed with which she can work when using her hands "[g]iven the absence of a usable right hand and the limitations in [her] left hand." Doc. 13 at 10. Although common sense dictates that some things must take longer to do one-handed (such as tying one's shoes, as Bantz testified), this does not mean that everything Bantz does takes her longer to do than a person with the use of both hands. The ALJ accounted for Bantz's limitations from her mild carpal tunnel syndrome and mild ulnar neuropathy in her left hand by restricting Bantz to handling and fingering with her left hand only frequently. AR 23. The ALJ also considered that Bantz cannot use her right hand, including a limitation in the RFC that Bantz has no use of her right hand and relying on the VE testimony that jobs existed that Bantz could perform

one-handed. AR 21, 72, 76. The ALJ adequately considered Bantz's limitations related to her hands, and the ALJ was not required to include a separate limitation related to pace.[9]

The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as [the determinations] are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). I find that the ALJ identified inconsistencies between Bantz's subjective allegations and other evidence in the record and that the ALJ provided good reasons, supported by substantial evidence in the record as a whole, for discrediting Bantz's allegations.

### B. Dr. Lark's Opinion

The ALJ gave "great weight" to the opinions of the state agency medical and psychological consultants, including Dr. Lark, because they "also deemed [Bantz] capable of light, unskilled work, with no more than moderate social limitations." AR 25. Dr. Lark opined that Bantz's "attention, concentration, and pace may vary but are adequate for tasks not requiring sustained attention" and that she could "complete at least simple, repetitive tasks on a sustained basis in a low stress environment that requires limited interaction with others." AR 104. Bantz argues the ALJ erred by failing to include all of Dr. Lark's limitations in the ALJ's assessment of Bantz's mental RFC after giving great weight to Dr. Lark's opinion. Bantz argues that the ALJ's mental RFC

---

[9] Bantz suggests that "[g]iven the absence of a usable right hand and the limitations in [her] left hand, [she] is in the bottom 10% of the population for manual dexterity," and she notes that according to the Dictionary of Occupational Titles, the jobs identified by the ALJ that she could perform require greater manual dexterity. Doc. 13 at 10. Bantz argues only that the ALJ erred in discrediting her subjective complaints; she does not argue that the VE's testimony—that the Dictionary of Occupational Titles does not "address . . . bilateral use of . . . hands" and that "in [her] opinion," a person could perform the jobs she named one-handed (AR 76)—is inconsistent with the Dictionary of Occupational Titles. I thus do not address the applicability of SSR 00-4p, 65 Fed. Reg. 75749 (Dec. 4, 2000).

assessment only restricted Bantz to "no more than occasional interaction with the public, co-workers, or supervisors" (AR 21) and did not limit Bantz to simple, repetitive tasks in a low stress environment.  Doc. 13 at 13-14.  Bantz also argues that Dr. Lark found Bantz had moderate difficulties in maintaining concentration, persistence, or pace, while the ALJ found Bantz had only mild limitations in that category.

When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence."  20 C.F.R. § 404.1527(b).  The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace."  *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).  The ALJ is not required to rely entirely on one doctor's opinion or to choose between medical opinions.  *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

As an initial matter, although the ALJ did not explicitly limit Bantz to unskilled work in his RFC description, he suggested Bantz could only perform unskilled work throughout his discussion of Bantz's RFC:  the ALJ stated that the overall record "suggest[ed Bantz] could have performed light, unskilled work, with additional postural, manipulative, and social accommodations" (AR 22); that Bantz's activities of daily living "suggest she could be around others outside her home while understanding, remembering, and carrying out the two and three-step tasks associated with unskilled work" (AR 24); and that the state agency consultants "also" (i.e., like the ALJ) found Bantz "capable of light, unskilled work" (AR 25).  In addition, all four positions the ALJ found Bantz could perform—counter clerk, parking lot attendant, restroom attendant, and conveyer line tender—involve unskilled work.  AR 26, 73.  Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568.  Thus, a limitation to unskilled work encompasses a limitation to "simple, repetitive tasks."  *See Hosch v. Colvin*, No. C15-2014-CJW, 2016 WL 1261229, at *5 (N.D. Iowa Mar. 30, 2016) (noting unskilled work involves "simple, routine, repetitive tasks"); *see also Freeman v. Colvin*, No. 13-

10

5108, 2014 WL 4467265, at *1 (W.D. Ark. Sept. 10, 2014) (noting the ALJ recognized an ability "to perform simple, repetitive tasks" is "tantamount to unskilled work"); *Brown v. Astrue*, No. 10-03113-CV-S-DGK, 2011 WL 2582555, at *2 (W.D. Mo. June 29, 2011) (noting the ALJ recognized the ability to perform "simple repetitive tasks" is "commensurate with unskilled work activity"); *Strang v. Barnhart*, No. C04-4037-MWB, 2005 WL 1500844, at *11 (N.D. Iowa June 23, 2005) (noting the ALJ recognized the ability "to perform simple, repetitive tasks on a sustained basis[ is] consistent with unskilled work activity") (report and recommendation). Even if the ALJ erred by not explicitly including a limitation to "unskilled work" or "simple, repetitive tasks" in the RFC, he nevertheless identified jobs that a person with those limitations could perform, and any error in failing to include a limitation to "simple, repetitive work" is therefore harmless. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (declining to reverse an ALJ's decision where "even if the ALJ had not erred, there [was] no indication that the ALJ would have decided differently").

Bantz also argues that the ALJ should have included a limitation to work performed in "low stress environments," as Dr. Lark did. But as previously noted, the ALJ was not required to rely entirely on a particular doctor's opinion. *See Martise*, 641 F.3d at 927. Although Dr. Lark found Bantz limited in her ability to handle stress, Dr. Mittauer included no such limitation in his RFC assessment: he found Bantz "limited but satisfactory" in her ability to deal with normal work stress, and he found her "seriously limited, but not precluded" from "deal[ing] with [the] stress of semiskilled and skilled work." AR 563-64. The ALJ did not assign "controlling weight" to Dr. Lark's opinion, and he was not obligated to adopt each one of Dr. Lark's opined limitations. The ALJ's failure to include a limitation related to Bantz's ability to work in "low stress environments" is supported by Dr. Mittauer's opinion, which the ALJ discounted only "to the extent that [Dr. Mittauer's opined limitations we]re inconsistent with the moderate limitations" in the ALJ's RFC assessment.

Finally, although Dr. Lark found Bantz had moderate difficulties in maintaining concentration, persistence, or pace when evaluating whether she met a listing for purposes of step three, when determining her RFC, he ultimately concluded that "[h]er attention, concentration, and pace . . . are adequate for tasks not requiring sustained attention" and that she "is able to complete at least simple, repetitive tasks on a sustained basis." AR 97. As already discussed, the ALJ's findings are consistent with Dr. Lark's ultimate conclusion regarding RFC limitations in concentration, persistence, or pace, and the ALJ was not obligated to include any additional limitations in the RFC.

### III. CONCLUSION

I respectfully recommend that the district court **affirm** the decision of the Social Security Administration and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DATED** this 22nd day of February, 2018.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa

12